UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BARRY GIBBS,

        Plaintiff,      **ORDER**

  - v -

                CV-06-5112 (ILG)(VVP)

CITY OF NEW YORK, et al.,

        Defendants.
------------------------------------------------------------------x

   Both the plaintiff and the defendants have moved for reconsideration of certain discovery rulings made at a conference on October 16, 2007. The plaintiff's motion concerns the defendant Louis Eppolito's disciplinary history, and in particular the records of Internal Affairs ("IA") and Civilian Complaint Review Board ("CCRB") investigations of Eppolito. The defendants' motion concerns a ruling that permitted the plaintiff to obtain discovery about a murder investigation in which Eppolito participated, based on a recent allegation by one of the chief witnesses that he had been coerced to give false testimony in that investigation. Finally, the plaintiffs have moved to compel more sufficient responses to various Requests for Admissions.

   By way of brief background, this action arises from the plaintiff's now-vacated murder conviction after he had spent more than eighteen years in jail. The plaintiff alleges that Eppolito fabricated evidence and withheld information from prosecutors, and that the other defendants are responsible for the conviction because of their inadequate supervision and discipline of Eppolito. The conviction was ultimately vacated upon the motion of the Kings County District Attorney because the only eyewitness, Peter Mitchell, came forward and recanted his testimony after learning of Eppolito's arrest on unrelated federal racketeering and narcotics charges several years ago.[1] Mitchell has asserted that Eppolito coerced him to identify the plaintiff as the person he saw leaving the scene where the murder victim's body was found.

---

[1] Eppolito was tried and found guilty of all of the charges at trial, including participation in several organized crime murder conspiracies. The conviction on the racketeering charges was vacated by the trial judge, however, on statute of limitations grounds. The case is now the subject of appeals before the Second Circuit by both the government and Eppolito.

*The Plaintiff's Motion for Reconsideration*

The court's ruling concerning the defendant Eppolito's disciplinary history required the City to produce all IA and CCRB files of investigations of Eppolito concerning allegations of excessive force, fabrication of evidence, and untruthfulness, but denied the plaintiff's request for all files concerning allegations of abuse of authority and misconduct in a criminal investigation. In particular, the court denied the plaintiff's request for the entire record of a department disciplinary hearing concerning an allegation that Eppolito leaked information about an organized crime investigation to targets of the investigation. The court's ruling is consistent with the prevailing practice in this court and other courts in the Second Circuit which typically limit discovery of a defendant's disciplinary history to complaints, whether substantiated or not, about conduct similar to the conduct alleged in the complaint. *See, e.g., Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007); *Pacheco v. City of New York*, 234 F.R.D. 53, 55 (E.D.N.Y. 2006); *Younger v. City of New York*, Dkt. No. 03 Civ. 8985, 2006 WL 1206489, at *1 (S.D.N.Y. May 2, 2006); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006); *Haya v. City of New York*, No. 93 CIV. 7754, 1995 WL 314724, at *1 (S.D.N.Y. May 24, 1995). The court declined to include files concerning the complaints the plaintiff identified as "abuse of authority" and "misconduct in a criminal investigation," because those phrases are so vague as to be meaningless in describing the scope of discovery. Virtually any alleged misconduct by the police constitutes an abuse of authority, and since Eppolito was a detective whose job it was to conduct criminal investigations, virtually any allegation of misconduct by him would constitute misconduct in a criminal investigation.

The plaintiff now asks the court to reconsider the limitation and essentially require the defendants to provide discovery concerning all allegations of misconduct made against Eppolito regardless of the nature of the allegations because such information is relevant to his *Monell* claims that the New York Police Department's failure to supervise and discipline Eppolito caused the constitutional harm suffered by the plaintiff. Most of the cases cited by the plaintiff in support of the motion for reconsideration do not, however, support the breadth of discovery he seeks; rather, they support the limitations drawn by the court's ruling. Thus, for example, in *Disorbo v. Hoy*, 74 F. App'x 101, 103-04, 2003 WL 22037275, at **2 (2nd Cir. 2003), the Second Circuit found that the district court did not abuse its discretion when it permitted the jury

in an excessive force case to consider evidence of another instance of excessive force in connection with the *Monell* claim. Similarly, in *Fiacco v. City of Rensselear*, 893 F.2d 319, 327-28 (2nd Cir 1986), the court endorsed the use of evidence concerning a police department's lax investigation and evaluation of claims of excessive force to prove the plaintiff's *Monell* claim that his excessive force claim was a consequence of the department's "policy of nonsupervision amounting to deliberate indifference." 893 F.2d at 328; *accord, Sango v. City of New York*, No. 83 CV 5177, 1989 WL 86995, at *10 (E.D.N.Y. July 25, 1989) (in excessive force case, complaints of "police brutality" relevant to *Monell* claim); *Beck v. City of Pittsburgh*, 89 F.3d 966, 973-74 (3rd Cir. 1996) ("complaints of similar nature" relevant to *Monell* claim). Although several cases cited by the plaintiff suggest a variety of admissible proof concerning *Monell* claims based on failures to supervise and discipline amounting to a policy of deliberate indifference, none of them, except for *Skibo v. City of New York*, 109 F.R.D. 58 (E.D.N.Y. 1985), stand for the proposition that an examination of a municipality's treatment of civilian complaints about conduct dissimilar from the conduct at issue in a case is relevant to a plaintiff's *Monell* claim. As for *Skibo* – where the court required the city to produce files relating to hundreds of complaints against all officers who served in a given precinct over a five-year period regardless of the nature of the complaint – that case was decided over twenty years ago when the law concerning *Monell* was first being developed and the approach endorsed there does not appear to have gained many adherents. Rather, a more balanced approach to discovery concerning disciplinary history has emerged, as exemplified in the more recent cases that address the issue.

The plaintiff has placed special emphasis on alleged misconduct that occurred some twenty-five years ago in which Eppolito was accused of having disclosed information to members of organized crime. That misconduct was the subject of an Internal Affairs investigation in 1984 and 1985, including an administrative trial in which the allegation was not sustained. The plaintiff argues that the alleged misconduct, and all records relating to the investigation and trial of that allegation, should be subject to discovery because that incident is directly relevant to his contention that Eppolito later removed a file concerning the investigation of the plaintiff in an effort to hide his misconduct. The court fails to see the connection. The plaintiff's constitutional claim here is not based on Eppolito's misappropriation of information.

Moreover, Eppolito does not deny that he removed the file relating to the plaintiff. The plaintiff therefore is able to make the argument that his purpose in doing so was to hide his misconduct. He does not need to conduct wide-ranging discovery concerning an inconclusive investigation of unrelated misconduct allegedly undertaken for an entirely different purpose to establish the point.

The plaintiff also argues that the 1984-1985 IA investigation is somehow relevant to his claim that Eppolito's supervisor, Anthony Marra, provided inadequate supervision. Marra apparently testified in Eppolito's behalf during that investigation. The plaintiff wishes to prove that Marra testified falsely and thus "provided cover" for Eppolito's alleged misconduct in that instance. This, the plaintiff argues, would serve as evidence that Marra condoned and facilitated Eppolito's misconduct in connection with the later investigation of the plaintiff. This theory of relevance is far too tenuous. Eppolito was not found guilty of the misconduct that was the subject of the 1984-1985 IA investigation. Therefore, to establish his theory that Marra lied during that investigation, the plaintiff would have to engage in a full-blown retrial of the misconduct that was the subject of 1984-1985 IA investigation in order to discredit Marra's testimony as untruthful and thus prove Marra condoned Eppolito's misconduct not only as to the conduct that was the subject of the 1984-1985 IA investigation, but also the later alleged misconduct that is the subject of the instant litigation. It is highly unlikely that the court would permit the jury to be diverted by such a lengthy sideshow at trial.

Finally, in a letter submitted after the original arguments were made on the motion, the plaintiff has suggested another, independent basis for permitting discovery concerning the 1984-1985 IA investigation. In materials recently obtained from federal law enforcement officials who conducted the investigation that led to Eppolito's recent conviction, the plaintiff has found information apparently obtained from a former detective who was involved in the murder investigation that led to the plaintiff's conviction. The detective, Richard Canderozzi, has apparently stated that he interviewed the principal eyewitness at the scene where the decedent's body was found, and that the eyewitness' description of the person the eyewitness saw driving away from the scene reminded Canderozzi of a Steven Briganti, who Canderozzi believed to be associated with organized crime. Of particular note to Canderozzi was the fact that Briganti had "salt and pepper" hair. Since the case was assigned to Eppolito, Canderozzi told Eppolito about

his suspicion but had little if any further involvement in the investigation. Canderozzi was quite surprised, however, to observe Briganti at the precinct the day after the murder, apparently there for a meeting with Eppolito, with freshly-dyed black hair.

Based on these facts, the plaintiff asserts a plausible motive for Eppolito to try to pin the murder on the plaintiff. Given Eppolito's own involvement with organized crime figures, he could well have wished to deflect attention away from members of organized crime. To the extent that information obtained during the 1984-1985 IA investigation provides evidence of Eppolito's connections with organized crime figures, that evidence could well be admissible at trial to prove the theory of motive now advanced by the plaintiff. At the recent conference concerning this matter, the court advised the parties that this theory of relevance provided a basis for permitting at least some discovery concerning the IA investigation. At the defendants' request, however, and because the deposition of Canderozzi was scheduled to occur on February 1, 2008, the court accepted the defendants' suggestion that the court should withhold decision until the court learns precisely what Canderozzi knew about Briganti and his involvement with organized crime.

For the foregoing reasons, the plaintiff's motion for reconsideration is denied. Based on the new theory of relevance now advanced, however, the plaintiff may reopen the issue of discovery concerning the 1984-1985 IA investigation once Canderozzi's testimony has been completed and analyzed.

*The Defendants' Motion for Reconsideration*

The defendants seek reconsideration of a ruling requiring them to produce documents relating to an investigation conducted in part by Eppolito. The investigation concerned the murder of one Dennis Thompson, for which an individual named David Rodney was ultimately convicted. David Rodney was also a suspect in the contemporaneous investigation of the sol-called "Disco Gant" murders, including the murder of one James Smith. In his published memoir, *Mafia Cop*, Eppolito states that he beat and tortured Rodney during his investigation of the Smith murder in an unsuccessful effort to extract a confession from him. The chief eyewitness to the Thompson murder, which was apparently under investigation at around the same time as the Smith murder investigation, has recently made a written statement which suggests he was coerced, or at least improperly influenced, to identify and testify against Rodney

as the person who shot him and killed his coworker. Given Eppolito's involvement in the Thompson murder investigation in which testimony was perhaps coerced to obtain a conviction of a person Eppolito was desperately trying to convict of another murder, and given the charge in this action that Eppolito similarly coerced a witness to give false testimony, this court ordered that the police files relating to the Thompson investigation, as well as those of the Smith investigation, be produced.

In their motion for reconsideration, the defendants argue that the plaintiff incorrectly represented that Eppolito was the officer who coerced the eyewitness to identify Rodney as the perpetrator of the Thompson murder. In fact, as the written statement of the eyewitness reflects, it was a Detective Hurd whom the eyewitness identifies as the officer who influenced his testimony. Nevertheless, the eyewitness identifies Eppolito specifically by name as one of the detectives who participated in the investigation, and given Eppolito's admitted efforts to obtain evidence against Rodney by coercion, the plaintiff should be given the opportunity to explore Eppolito's involvement in the Thompson murder investigation to determine whether Eppolito was responsible in some way for the coercion Hurd practiced on the eyewitness. The defendants' motion for reconsideration is therefore denied.

*The Plaintiff's Motion to Compel Admissions*

The plaintiff contends that the defendants' responses to a number of his Requests for Admissions are evasive or fail to provide an appropriate explanation for the defendants' claimed inability to respond substantively. The court addressed the issue at some length with the parties at a conference on January 30, 2008, and provided rulings on the record concerning supplemental responses that the defendants were required to make to a number of the requests.[2] One problem the defendants were directed to rectify were inadequate descriptions of the scope of the "reasonable inquiry" that they made and of the "information readily obtainable by defendants" that they reviewed before concluding they were unable to respond to a number of the requests. A second was the failure to provide explanations for the defendants' refusal to admit facts that were disclosed in various documents prepared by the police department or other

---

[2]The requests and responses specifically addressed by the court were Requests 11, 22, 23, 35, 37, 45, 63, 64, and 74.

agencies of the city. The court did not individually specify all of the requests for which supplementation is required, however, and the defendants requested guidance as to the supplementation that is required with respect to the requests that were not individually discussed at the conference. Set forth below are specific directions for the supplementation of responses to requests on which the plaintiff has sought rulings but which were not addressed at the conference.

*Requests 2-5, 8, 13-21, 24-26, 28-29, 32-33, 34, 36, 38, 46-47*, 50: These requests require a description of the "reasonable inquiry" that was made and an explanation for why the "information readily obtainable by defendants is insufficient to enable defendants to admit or deny" the requests. The court recognizes that in some instances the requests seek information about the actions of persons other than the defendants; nevertheless, one or more of the defendants may have been in a position to witness the conduct and the response must make it clear that the information is not within the personal knowledge or recollection of any of the defendants.

*Requests 7, 10, 48-49, 51-52*: No further supplementation is required as the admission requested concerns facts either not personally known to the defendants, or not readily obtainable by the defendants, or both.

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
February 4, 2008