UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BARRY GIBBS,

                       Plaintiff,                  **ORDER**

    - v -

                                                          CV-06-5112 (ILG)(VVP)

CITY OF NEW YORK, et al.,

                       Defendants.
-----------------------------------------------------------------x

     Before the court are several matters concerning discovery sought by the plaintiff which require rulings by the court.

     1. *The 1984-1985 IAB Investigation of Eppolito.* The plaintiff's initial arguments in support of discovery concerning this investigation were rejected by the court in rulings from the bench and were later the subject of a motion for reconsideration which was denied by the court in an order dated February 4, 2008. While the motion for reconsideration was pending, the plaintiff advanced a new theory of relevance for obtaining discovery concerning that investigation in a letter dated January 9, 2008. The argument was based on information recently received by the plaintiff which suggested that the defendant Eppolito may have been motivated to fabricate evidence against the plaintiff in an effort to protect a person believed to be associated with organized crime. (The new theory and the information on which it was based are set forth in the February 4 order.) The court indicated that it would consider what portions of the 1984-1984 IAB investigation might be discoverable, given this new theory of relevance, after the source of the new information was deposed.

     The plaintiff has now supplied the court with the deposition testimony of the witness, a former New York Police Department detective named Richard Canderozzi, which essentially (albeit after some difficult questioning) conforms with what the plaintiff had presented to the court in the January 9, 2008 letter. Nevertheless, after reviewing the documents that have already been disclosed to the plaintiff concerning the 1984-1985 IAB investigation, copies of which were provided to the court under seal by the defendants, the court concludes that further discovery concerning the 1984-1985 investigation is not reasonably calculated to lead to evidence concerning a possible motive that is not already disclosed in those documents.

Accordingly, the plaintiff's request for further production of documents relating to the 1984-1985 IAB investigation is denied.

    2. *The Frank Fiala Murder Investigation Files.* The plaintiff has renewed his discovery request for production of all files relating to the investigation of Frank Fiala's murder in 1982, also now based on the theory that those files may provide some evidence of motive. The plaintiff supports the renewed request with a brief filed by the prosecution in the criminal case against Eppolito. The brief asserts that Eppolito elicited a $5,000 bribe from Salvatore "Sammy the Bull" Gravano in return for failing to pursue the murder investigation, in which Gravano was a suspect.[1] The brief does not explain the evidence that supports the bribery assertion. Nevertheless, the revelation provides a sufficient basis for exploring the Fiala murder investigation, and Eppolito's involvement in it. A review of that investigation may lead to evidence concerning Eppolito's motivation to assist organized crime figures, as well as his methods for influencing an investigation away from one suspect and toward another, as it is alleged he did in the case before this court. Accordingly, the defendant is directed to produce the requested files.

    3. *Assertion of Privilege During the Canderozzi Deposition.* The plaintiff seeks a ruling requiring Canderozzi to answer a question that he was directed not to answer by his counsel, who also serves as counsel for the defendants. Following a break for lunch during his deposition, Canderozzi advised the plaintiff's counsel that he wished to clarify testimony he had given before the luncheon recess. Shortly before the clarification, as a result of a ruling made by the court, Canderozzi had testified that during the recess he had discussed his deposition testimony with his counsel. The plaintiff's counsel thus asked the following question:

> I'm asking you when you walked out the door to go to lunch before you had a conversation with your attorney about the deposition on your own, did it suddenly come to you that you made a mistake and you needed to make a clarification?

---

[1]Gravano later achieved notoriety by agreeing to cooperate with the government and testifying against John Gotti, the boss of the Gambino family, in the prosecution that led to Gotti's conviction. Gravano ultimately confessed to the Fiala murder.

Canderozzi Tr. at 155:25 - 156:6. Canderozzi's counsel instructed him not to answer the question on the basis of the attorney-client privilege

As this is a federal question case for which federal law provides the rule of decision, the federal law of privilege applies to this issue. *See* Fed. R. Evid. 501; *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015 (1987); *Lipinski v. Skinner*, 781 F. Supp. 131, 134-35 (N.D.N.Y. 1991). In the Second Circuit, the elements of the attorney-client privilege are outlined as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036 (2d Cir. 1984); *accord United States v. Int'l Bhd. of Teamsters,* 119 F.3d 210, 214 (2d Cir. 1997). The Second Circuit has reiterated on numerous occasions that, like most privileges, the attorney-client privilege "should be strictly confined within the narrowest possible limits underlying its purpose." *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991) (citing, *inter alia*, *In re Grand Jury Subpoena (Shargel)*, 742 F.2d 61, 62 (2d Cir. 1984)); *accord Int'l Bhd. of Teamsters*, 119 F.3d at 214. Thus, absent special circumstances, the general subject matter of attorney-client communications is typically not privileged. *See generally, United States v. Construction Prod. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996); Local Civil Rule 26.2(a)(2).

As phrased, the question posed to Canderozzi does not seek the content of any communication between the witness and his counsel – indeed it seeks to *exclude* from consideration any such communication – and may be answered by either "yes" or "no." At most, a "no" answer would give rise to an implication that the witness and his counsel had perhaps discussed the subject during lunch, but would not disclose what was said. Accordingly, the invocation of the attorney-client privilege by the witness was erroneous, and he must provide an answer to the question. He shall do so by supplying an affidavit in which the question is restated in full and in which he supplies a "yes" or "no" answer to the question. The affidavit shall also

state whether Canderozzi discussed the subject about which he provided clarification with his counsel during the recess. The affidavit is to be supplied within twenty days.[2]

**SO ORDERED:**

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
 March 21, 2008

---

[2] Although no ruling has been requested of the court, the parties have each addressed a matter of concern to the court in their arguments concerning this issue. During the course of the Canderozzi deposition, the plaintiff's counsel asked a series of questions alluding to potential criminal liability by the witness for perjurious testimony or false statements to federal investigators. Canderozzi Tr. 75-78. The questions were asked in an aggressive, threatening manner, and they were understood as threats. Such questions are not to be repeated in future depositions. An explanation of the meaning of the oath at the outset of the deposition, as was done here, is sufficient to advise a witness of the obligations of truthfulness and the seriousness of the proceeding.