**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| **BARRY GIBBS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CV 06-5112 (ILG) (VVP)** |
| | ) | |
| **THE CITY OF NEW YORK, LOUIS** | ) | |
| **EPPOLITO, SR., JAMES FAIRCHILD,** | ) | |
| **LOUIS RANGO, JOHN MULDOON,** | ) | |
| **ANTHONY MARRA,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**JOINT PRE-TRIAL ORDER**

1.      APPEARANCE OF COUNSEL

For Plaintiff, Barry Gibbs:

Barry Scheck
Nick Brustin
Emma Freudenberger
Neufeld Scheck & Brustin, LLP
99 Hudson Street, 8th Floor
T: (212) 965-9081
F: (212) 965-9084

For Defendants City of New York and John Muldoon:

Arthur Larkin
Prathyusha Reddy
New York City Law Department
100 Church Street, Room 3-180
New York, New York 10007
T: (212) 788-1599
F: (212) 788-9776

1

2.    JURISDICTIONAL STATEMENT

This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and 28 § U.S.C. 1343 (3) and (4), over claims arising under 42 U.S.C. § 1983.  This Court has supplemental jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367(a).

3.    CLAIMS THAT REMAIN TO BE TRIED

Plaintiff:  Plaintiff respectfully submits that the following claims made by Plaintiff Barry Gibbs against Defendants Louis Eppolito, John Muldoon, and the City of New York will be tried by a jury:  (1) state law malicious prosecution against Defendant Eppolito and the City of New York pursuant to respondeat superior liability; (2) state law negligent supervision against the City of New York; (3) 42 U.S.C. Section 1983 supervisory liability against Defendant Muldoon; and (4) municipal liability under 42 U.S.C. Section 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City of New York.[1]

DEFENSES

Defendants City of New York and John Muldoon:  Defendants respectfully submit that they are not liable for the state of federal claims of malicious prosecution because there was (1) probable cause for the criminal prosecution of Barry Gibbs.  Defendant Muldoon further submits that he not liable for the state negligent supervision and federal supervisory liability claims against him because of his lack of personal involvement and qualified immunity.  Defendant City submits that it is not liable for maintaining an unconstitutional police or practice under 42 U.S.C. § 1983 and *Monell*, or respondeat superior.

4.    STATEMENT REGARDING JURY TRIAL

This case is to be tried before a jury.  The parties have estimated that this case will take 20 trial days to present.

---

[1]    Plaintiff will drop all other remaining claims.

5.    STATEMENT OF STIPULATED FACTS

Plaintiff Barry Gibbs and Defendants John Muldoon and the City of New York

stipulate that:

a.  If the jury determines that plaintiff Barry Gibbs is entitled to recover lost earnings

    proximately caused by the wrongful conduct of defendant Louis Eppolito, John Muldoon,

    and/or the City of New York, then the damages awarded shall be $894,389.00.  This

    stipulation is without prejudice to defendants' right to contend at trial that they are not

    liable to Mr. Gibbs for lost earnings, or any other type of damages.

b.  Trial exhibit 52, Bates stamped DOJ000002-99, is a complete and accurate copy of the

    original NYPD Virginia Robertson homicide file found in Louis Eppolito's Las Vegas

    home in 2005.

c.  Since the filing of this lawsuit in 2006, no representative of the City of New York has at

    any point in time know to the New York City Law Department received any

    communication from Defendant Louis Eppolito or had any communication with

    Defendant Louis Eppolito about the allegations in this case aside from communications

    that occurred at the time of Louis Eppolito's depositions in this case on May 28, 29, and

    30, 2008 and April 29, 2009.

d.  The above-named parties stipulate that they will not refer in the presence of the jury to

    the fact that Plaintiff has settled his lawsuit against the State of New York under Section

    8-b of the Court of Claims Act, which stems from the events at issue in this case,

    including any reference to the amount of that settlement.  This stipulation is without

    prejudice to defendants' right to contend that the amount of any jury award should be

    offset by Plaintiff's settlement with the State.

e.   The above-named parties stipulate that they will not object on authenticity grounds to the following categories of documents: any documents received from the United States Postal Service; any documents received from the Kings County District Attorney's Office; any documents received from the New York State Department of Correctional Services; any documents received from the City of New York Department of Correction; any documents received from the United States Drug Enforcement Administration; any documents received from the United States Attorney's Office; any documents received from the Office of the City Medical Examiner; or any NYPD police reports or notes from NYPD files produced in discovery.

6.   WITNESS LISTS

### *PLAINTIFF WILL CALL THE FOLLOWING FACT WITNESSES:*

1.  Barry Gibbs
    The Prince George
    14 East 28th Street
    New York, NY 10016
    212-684-3272

    Mr. Gibbs will testify concerning his innocence and attempts to prove his innocence, his involvement in the Robertson criminal investigation, his knowledge of the victim, his interactions with other witnesses, as well as all of his pecuniary and non-pecuniary damages, including his life before prison, his life during prison and his life after prison

2.  Louis Eppolito, Sr.
    Register No. 04596-748
    USP Tuscon
    U.S. Penitentiary
    9300 South Wilmot Road
    Tuscon, Arizona 85706

    Mr. Eppolito will testify concerning his involvement in the Robertson criminal investigation, his understanding of accepted policies and procedures at the New York City Police Department (NYPD) at the time of the Robertson homicide investigation in 1986, his supervision, and his involvement with the disciplinary mechanisms of the NYPD, and subject to motions *in limine*, his prior history with the NYPD and his criminal history.

4

3. James Fairchild
   c/o Arthur Larkin
   City of New York Law Department
   100 Church Street
   New York, NY 10007

Mr. Fairchild will testify concerning his involvement in the Robertson criminal investigation, his history with and knowledge of Detective Eppolito, his understanding of accepted policies and procedures at the NYPD at the time of the Robertson homicide investigation in 1986, and supervision.

4. Louis Rango
   c/o Arthur Larkin
   City of New York Law Department
   100 Church Street
   New York, NY 10007

Mr. Rango will testify concerning his involvement in the Robertson criminal investigation, his history with and knowledge of Detective Eppolito, his understanding of accepted policies and procedures at the NYPD at the time of the Robertson homicide investigation in 1986, his supervision, and his interaction with federal authorities concerning this case.

5. John Muldoon
   c/o Arthur Larkin
   City of New York Law Department
   100 Church Street
   New York, NY 10007

Mr. Muldoon will testify concerning his involvement in the Robertson criminal investigation, his supervision of Mr. Eppolito in this case, his supervision of detectives generally, and his understanding of accepted policies and procedures at the NYPD at the time of the Robertson homicide investigation in 1986.

6. Anthony Marra
   c/o Arthur Larkin
   City of New York Law Department
   100 Church Street
   New York, NY 10007

Mr. Marra will testify concerning his involvement in the Robertson criminal investigation, his supervision of Mr. Eppolito in this case, his supervision of detectives generally, his understanding of accepted policies and procedures at the NYPD at the time of the Robertson homicide investigation in 1986, and, subject to motions *in limine*, his knowledge of the 1984-85 investigation into allegations that Eppolito leaked information to the mafia.

7. Peter Mitchell
89-111 Porter Avenue
Brooklyn, NY 11237

Mr. Mitchell will testify about his involvement with the Robertson criminal investigation, interactions with Detective Eppolito and others, the circumstances of his recantation, and his interaction with federal authorities concerning this case.

8. Peter Gentile
c/o Christopher Harwood
United States Department of Justice
501 Third Street, N.W.
Washington, D.C. 20530

Mr. Gentile will testify about his observations concerning the crime and his involvement with the Robertson criminal investigation.

9. James Ruggiero
c/o Arthur Larkin
City of New York Law Department
100 Church Street
New York, NY 10007

Mr. Ruggiero will testify concerning his involvement in the Robertson criminal investigation, his history with and knowledge of Detective Eppolito, his understanding of accepted policies and procedures at the NYPD at the time of the Robertson homicide investigation in 1986, and supervision.

10. Richard Canderozzi
c/o Arthur Larkin
City of New York Law Department
100 Church Street
New York, NY 10007

Mr. Canderozzi will testify concerning his involvement in the Robertson criminal investigation, his history with and knowledge of Detective Eppolito, his understanding of accepted policies and procedures at the NYPD at the time of the Robertson homicide investigation in 1986, and supervision, and his interaction with federal authorities concerning this case.

11. Tim Bakken
Department of Law, Room 427
Building 606
U. S. Military Academy
West Point, New York 10996

Mr. Bakken will testify about his involvement in the Robertson criminal investigation, his lack of knowledge concerning *Brady* material, and his interactions with Mr. Eppolito.

12. Martha Robertson
    2007 Foster Ave.
    Brooklyn, New York 11210

Ms. Robertson will testify about interactions with Detective Eppolito and the NYPD concerning the criminal investigation into the Virginia Robertson homicide.

13. Ira London
    Law Offices of London and Robertson
    245 Fifth Avenue, Suite 1900
    New York, New York 10016

Mr. London will testify concerning his representation of Barry Gibbs during Mr. Gibbs' criminal proceedings, his knowledge of the criminal investigation during the time of trial, his knowledge of *Brady* material, his knowledge of misconduct by Detective Eppolito, his interactions with Detective Eppolito, his investigative activities and attempts to uncover misconduct by Detective Eppolito, as well as Mr. Gibbs' non-pecuniary damages.

14. John Perfetti (testimony by deposition)
    Special Agent
    United States Department of Justice
    Drug Enforcement Administration
    99 10th Avenue
    New York, NY 10011

Mr. Perfetti will testify about his involvement in the investigation of Louis Eppolito, his reinvestigation of the Robertson homicide investigation, as well as Mr. Gibbs' non-pecuniary damages.

15. Mitchell Gibbs
    739 Orangeburgh Road
    Rivervale, NJ 07675

Mitchell Gibbs is Barry Gibbs' son and will testify concerning damages including his relationship and his family's relationship with Mr. Gibbs before, during, and after Mr. Gibbs' incarceration, and Mr. Gibbs' life before, during, and after prison.

16. Bruce Presnick
    395 Civic Drive
    Pleasant Hill, CA

Mr. Presnick will testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

7

17. Michael Levitan
    Los Angeles, CA

Mr. Levitan will testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

18. Joseph P. Armao
    Linklaters LLP
    1345 Avenue of the Americas
    New York, NY 10105

Mr. Armao was the Chief Counsel to the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Measures of the Police Department, and will testify concerning his knowledge of NYPD policies and customs with regard to supervising and disciplining personnel accused of and/or who committed misconduct as described in the Mollen Commission Report.

19. Robert Hennoch
    United States Attorney
    Eastern District of New York
    147 Pierrepont Street
    Brooklyn, NY 11201
    718-254-6234

Mr. Hennoch will testify concerning the reinvestigation of the Robertson homicide, and subject to motions *in limine*, his involvement in the criminal investigation and prosecution of Louis Eppolito.

## *PLAINTIFF MAY CALL*

20. Rhonda Edreich
    200 West 26th Street, Apt. 6s
    New York, NY 10001

Subject to *motions in limine*, Mrs. Edreich may testify concerning her involvement in the Robertson homicide investigation, her knowledge of Mr. Gibbs' relationship with the victim, her involvement with Mr. Gibbs, her involvement with Detective Eppolito, and her involvement with federal authorities concerning the reinvestigation of the Robertson homicide.

21. Henry Fogelman
    41 Montgomery St.
    Bayshore, NY 11706

8

Subject to motions *in limine*, Mr. Fogelman may testify concerning his interactions with Barry Gibbs, his involvement with the criminal investigation and criminal prosecution of Mr. Gibbs, his interaction with federal prosecutors during the reinvestigation of the Robertson homicide, his own criminal history, his prison history, prior cooperation with state and federal authorities, and other indicia of untrustworthiness.

22. Jon Besunder
c/o Arthur Larkin
City of New York Law Department
100 Church Street
New York, NY 10007

Mr. Besunder may testify concerning his involvement in the Robertson criminal investigation, and interactions with Detective Eppolito.

23. Dennis Britt
(Address currently unknown)

Mr. Britt may testify concerning his involvement with the Robertson homicide investigation.

24. Michael Prior
(Address currently unknown)

Mr. Prior may testify concerning his involvement with the Robertson homicide investigation.

25. John Valenti
(Address currently unknown)

Mr. Valenti may testify concerning his involvement with the Robertson homicide investigation.

26. Detective Felix Sciannamea
c/o Arthur Larkin
City of New York Law Department
100 Church Street
New York, NY 10007

Mr. Sciannamea may testify concerning his involvement in the Robertson criminal investigation, his history with and knowledge of Detective Eppolito, his understanding of accepted policies and procedures at the NYPD at the time of the Robertson homicide investigation in 1986, and supervision.

27. Dr. Andrew Wolodkzo
(Address currently unknown)

Dr. Wolodzco was an Associate Medical Examiner who conducted Virginia Robertson's autopsy, and may testify concerning defendants' misconduct in Virginia Robertson investigation including without limitation the handling and testing of forensic evidence in this case.

28. Anthony Smith
    (Address currently unknown)

    Mr. Smith may testify concerning his involvement with Detective Eppolito in the Robertson homicide investigation.

29. Carlos Small
    (Address currently unknown)

    Mr. Small may testify concerning his involvement with Detective Eppolito in the Robertson homicide investigation.

30. Curtis Phillips
    (Address currently unknown)

    Mr. Philips may testify concerning his involvement with Detective Eppolito in the Robertson homicide investigation.

31. Mike Skrinjar
    (Address currently unknown)

    Mr. Skrinjar may testify concerning his involvement with Detective Eppolito in the Robertson homicide investigation.

32. Mark Feldman
    BDO Seidman, LLP
    135 West 50th Street, 20th Floor
    New York, NY 10020
    212-885-8338

    Mr. Feldman may testify about his involvement in the Robertson homicide investigation.

33. Tom O'Connor
    (Address currently unknown)

    Mr. O'Conner may testify about his involvement with Henry Fogelman in other cases.

34. Andrew Dember
    United States Department of Justice
    Southern District of New York
    One St. Andrews Plaza

New York, New York 10007

Mr. Dember may testify concerning his involvement in the Robertson homicide investigation, and his lack of knowledge concerning *Brady* material.

35. David Rodney 80A3209
    Arthur Kill Correctional Facility
    2911 Arthur Road
    Staten Island, NY 10309

Mr. Rodney may testify about his interactions with Detective Eppolito in prior cases and Mr. Eppolito's misconduct in those cases.

36. Philip Dure
    (Address currently unknown)

Mr. Dure may testify about his interactions with Detective Eppolito in prior cases and Mr. Eppolito's misconduct in those cases.

37. John Francolla
    Special Agent
    United States Department of Justice
    Drug Enforcement Administration
    99 10th Avenue
    New York, NY 10011
    347-680-0988

Mr. Francolla may testify concerning interviews he conducted with Henry Fogelman and Richard Canderozzi during the reinvestigation of the Robertson homicide, as well as Mr. Gibbs' non-pecuniary damages.

38. William Juliano[2]
    (Address currently unknown)

Mr. Juliano may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

39. Harvey Orlick
    (Address currently unknown)

Mr. Orlick may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

40. John Guido
    (Address currently unknown)

---

[2] Witnesses #38-50 are subject to Court rulings on motions *in limine*.

Mr. Guido may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

41. William Medican
    (Address currently unknown)

    Mr. Mendican may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

42. Richard Ward
    (Address currently unknown)

    Mr. Ward may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

43. Hugh Mo
    225 Broadway, Ste. 2702
    New York, NY 10022

    Mr. Mo may testify concerning his interactions with Detective Eppolito, as well as his knowledge of and investigation into involvement of Mr. Eppolito for leaking information to Rosario Gambino in 1984 and Mr. Eppolito's subsequent reinstatement to the force in 1985.

44. Robert McCormack
    (Address currently unknown)

    Mr. McCormack may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

45. Kenneth Penzes
    (Address currently unknown)

    Mr. Penzes may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

46. Lawrence Henris
    (Address currently unknown)

    Mr. Henris may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

47. Daniel Sullivan
    (Address currently unknown)

Mr. Juliano may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

48. Frank Corsillo
    (Address currently unknown)

Mr. Corsillo may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

49. Frank Schilling
    (Address currently unknown)

Mr. Schilling may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

50. Richard Nicastro
    (Address currently unknown)

Mr. Nicastro may testify concerning his interaction with, supervision of, and knowledge of Detective Eppolito, including during the 1984–85 Internal Affairs investigation of Eppolito.

51. Roderick C. Lankler[3]
    Lankler Siffert & Wohl LLP
    500 Fifth Avenue, 33rd Floor
    New York, New York 10110

Mr. Lankler was a Commissioner of the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Measures of the Police Department, and may testify concerning his knowledge of NYPD policies and customs with regard to supervising and disciplining personnel accused of and/or who committed misconduct as described in the Mollen Commission Report.

52. Leslie U. Cornfeld
    (Address currently unknown)

Ms. Cornfeld was Deputy Counsel to the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Measures of the Police Department, and may testify concerning his knowledge of NYPD policies and customs with regard to supervising and disciplining personnel accused of and/or who committed misconduct as described in the Mollen Commission Report.

53. Brian Carroll
    (Address currently unknown)

---

[3] Witnesses #51-56 are listed subject to Court's rulings on motions *in limine*.

Mr. Carroll was the Director of Investigations for the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Measures of the Police Department, and may testify concerning his knowledge of NYPD policies and customs with regard to supervising and disciplining personnel accused of and/or who committed misconduct as described in the Mollen Commission Report.

54. Robert A. Marchado
    (Address currently unknown)

    Mr. Marchado was the Deputy Chief Investigator for the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Measures of the Police Department, and may testify concerning his knowledge of NYPD policies and customs with regard to supervising and disciplining personnel accused of and/or who committed misconduct as described in the Mollen Commission Report.

55. Frank O'Hara
    (Address currently unknown)

    Mr. O'Hara was the Deputy Chief Investigator for the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Measures of the Police Department, and may testify concerning his knowledge of NYPD policies and customs with regard to supervising and disciplining personnel accused of and/or who committed misconduct as described in the Mollen Commission Report.

56. Alexis Brosen
    The Prince George
    14 East 28th Street
    New York, NY 10016

    Ms. Brosen may testify concerning Mr. Gibbs' non-pecuniary damages including his psychiatric condition before, during, and, after incarceration, and Mr. Gibbs' life before, during, and after prison.

57. Jeanne Mendelson-Kaye
    (Address currently unknown)

    Ms. Mendelson-Kaye may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

58. Jeffrey Goldberg
    2001 Marcus Avenue
    Lake Success, New York 11042

14

Mr. Goldberg may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

59. Joey Libonati
    9 Wildflower Lane
    Wantagh, New York 11793

Mr. Libonati may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

60. Jean Libonati
    9 Wildflower Lane
    Wantagh, New York, 11793

Mrs. Libonati may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

61. Mark Brenner
    (Address currently unknown)

Mr. Brenner may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

62. David Ritter
    (Address currently unknown)

Mr. Ritter may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

63. Stu Geller
    (Address currently unknown)

Mr. Geller may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

64. Joseph Cessano
    (Address currently unknown)

Mr. Cessano may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

65. Mikey Kolb
    Holmstead, FL

Mr. Kolb may testify concerning his knowledge of Mr. Gibbs' non-pecuniary damages, including life in prison and afterwards, and Mr. Gibbs' life before, during, and after prison.

66. Sal Mascoli
    Queens, NY

Mr. Kolb may testify concerning his knowledge of Mr. Gibbs' non-pecuniary damages, including life in prison and afterwards, and Mr. Gibbs' life before, during, and after prison.

67. Marie Schembri
    Schembri & Associates
    158 Dean St.
    Brooklyn, NY 11217

Ms. Schembri may testify concerning her interactions with witnesses in this case.

68. A Records Custodian of the United States Postal Service
    (Address currently unknown)

The records custodian may testify concerning his knowledge of  authenticity of and significance of notations on Plaintiff's United States Postal Service Records made in the course of regularly conducted business activity.

69. James Glass
    (Address currently unknown)

Mr. Glass may testify concerning admissions by Henry Fogelman concerning fabricated confessions.

70. Howard Greenberg
    (Address currently unknown)

Mr. Greenberg may testify concerning damages including his and his family's relationship with Mr. Gibbs before, during, and after prison, and Mr. Gibbs' life before, during, and after prison.

71. Rabbi Michael Chazan
    (Address currently unknown)

Mr. Chazan may testify concerning Mr. Gibbs' life in prison and Mr. Gibbs' efforts to prove his innocence, and Mr. Gibbs' life before, during, and after prison.

72. Hon. Milton Mollen
    620 Eighth Avenue, 34th Fl.
    New York, New York 10018

Judge Mollen chaired the New York City Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Measures of the Police Department, and may testify concerning his knowledge of NYPD policies and customs with regard to supervising and disciplining personnel accused of and/or who committed misconduct as described in the Mollen Commission Report.

73.  Dr. Sanford Drob
     Clinical and Forensic Psychology
     26 Court Street, Suite 1214
     Brooklyn, New York 11242-1112

Dr. Drob may testify concerning Mr. Gibbs' non-pecuniary damages including his psychiatric condition before, during, and, after incarceration, and Mr. Gibbs' life before, during, and after prison.

PLAINTIFF'S EXPERT WITNESS LIST

1.  **Russell Fischer**
    **11035 NW 26 Drive**
    **Coral Springs, FL  33065**

**Qualifications:**
See Attached CV.  Chief Fischer was employed by the Miami-Dade Police Department (MDPD) from 1975 to the end of 2008.  He joined the MDPD in 1975 and was promoted through all the civil service ranks. He retired with the rank of Division Chief.  Chief Fischer's experience in police management, investigations and operations includes command assignments in the Robbery Bureau, Northwest District and City of Miami Lakes as well as having served as the Police Captain of the Professional Compliance Bureau, Narcotics Bureau and Economic Crimes Bureau.  Most importantly, prior to obtaining the rank of Chief, Chief Fischer conducted and supervised homicide investigations and internal affairs at every level.

As Division Chief, Chief Fischer's responsibilities included commanding employees assigned to Miami International Airport, Police Operations Bureau (Port of Miami and Transit), Community Affairs Bureau, Warrants Bureau, Court Services Bureau and Special Patrol Bureau.  Thereafter, Chief Fischer commanded Criminal Investigations, responsible for all Departmental investigations that involve the Homicide (Officer Involved Shootings and In Custody deaths), Robbery, Sex Crimes and Domestic Crimes Bureaus. He has investigated or presided over as a supervisor innumerable Officer-Involved Shootings and In Custody Deaths including 24 such events in 2008.  Chief Fischer recently served as the Incident Commander for Super Bowl XLI and was the Department Hurricane Coordinator.

Chief Fischer holds a Master of Science Degree in Management and a Master of Public Administration Degree from the University of Miami.  Chief Fischer is also a graduate of the FBI National Academy.  He has authored articles for the FBI Law Enforcement Bulletin (LEB) and Police Chief Magazine (IACP) and provided instruction in a variety of topical areas for the International Association of Chiefs of Police and instructed at the Metropolitan Police Institute in

17

Miami, Miami-Dade College and for homicidetraining.com. Chief Fischer also serves as a contractor/consultant for the United States Department of Justice as it relates to violent crimes in Colombia.

**Summary of Proposed Testimony[4]:**
See Attached Report.  Chief Fischer, Plaintiff's police practices expert, will testify about his knowledge of minimally accepted police practices concerning homicide investigations, training, supervision, and discipline, and compliance with those standards by the City, supervisors, and individual defendants in this case and as a matter of practice.  Chief Fischer will testify regarding specific deviations from documented minimally accepted police practices in this case, including failures to document eyewitness and witness interviews, failures to follow up on suspects and other investigative leads, failures to document and disclose material exculpatory information pursuant to *Brady v. Maryland*, and failures to conduct and administer proper line up procedures. Chief Fischer will further testify about failures to comply with minimally accepted practices regarding the supervision of Eppolito by Defendant Muldoon, including Muldoon's failure to review reports, failure to meet with the detectives he supervised, failure to engage in day-to-day supervision in accordance with minimally accepted police practices, and his ratification of misconduct among the detectives he supervised, including with regard to Eppolito in particular. Chief Fischer will also testify regarding the connection between a viable and effective internal mechanism for reporting and investigating employee misconduct, as well as supervisory support, and minimizing corruption among police officers.

2.  **Dr. Richard Schottenfeld**
    **Yale University**
    **Professor of Psychiatry, and Master of Davenport College**
    **34 Park St, S-204**
    **New Haven, CT 06519**

**Qualifications:**
See Attached CV.  Dr. Schottenfeld is a Professor of Psychiatry in the Yale University School of Medicine.  For several years in the 1990s, Dr. Schottenfeld served as one of three court-appointed medical monitors for the Connecticut Correctional Institute-Niantic, a prison for women, as part of a federal consent decree.  In the late 1990s, he also conducted a study evaluating the prevalence of substance use and other psychiatric disorders among arrestees incarcerated in adult or juvenile detention centers in New Haven, Bridgeport or Hartford, Connecticut.  Dr. Schottenfeld has also studied the psychiatric effects of occupational or environmental exposure, illness or injury.  He is actively engaged in treating patients, clinical research, and teaching, and is the Principal Investigator on research grants from the National Institute on Drug Abuse investigating pharmacological and behavioral treatments for heroin or other opioid dependence and for co-occurring chronic pain and opioid dependence.  He also currently conducts studies both in the United States and internationally. In addition to his work in research, teaching and clinical work in psychiatry, for the past 8 years Dr. Schottenfeld has

---

[4]    Nothing in this summary should be construed as a limitation on the testimony Plaintiff may elicit from Chief Fischer at trial within the limitations set by the Federal Rules of Evidence.

served as the Master of Davenport College, one of the 12 residential colleges at Yale for Yale undergraduates.

**Summary of Proposed Testimony[5]:**

See Attached Report by Dr. Richard Schottenfeld.  Dr. Schottenfeld will testify concerning his knowledge of psychological damages sustained by Plaintiff as a result of his wrongful conviction and imprisonment.  Dr. Schottenfeld will testify regarding Plaintiff's current psychological condition, including but not limited to Mr. Gibbs' extreme mood swings, recurrent dreams and nightmares about prison, mistrust and suspicion of others, and feelings of detachment and estrangement.  He will further testify about Plaintiff's psychosocial and developmental history, based on Plaintiff's childhood in Brooklyn, his close friendships, his experience in the military, his relationship with his ex-wife, his relationship with his son, Mitchell, his life during the time period in which he worked for the United States Postal Service, and his relationship with Rhonda Weber.  Dr. Schottenfeld will further testify about Plaintiff's psychosocial history following his 1986 arrest and imprisonment, including without limitation Mr. Gibbs' experience of loneliness and losing contact with his son, parents, and friends.  Dr. Schottenfeld will also testify concerning Plaintiff's preexisting psychological condition, including the periods of depression, anxiety and paranoia he suffered occasionally prior to prison, and the ways in which the foregoing conditions were exacerbated during his wrongful incarceration.

**3.  Ron Smith**
   **Ron Smith & Associates, Inc.**
   **P.O. Box 670**
   **Collinsville, MS 39325**

**Qualifications:**

See Attached CV.  Ron Smith is the president of Ron Smith & Associates, Incorporated, a Forensic Consulting, Training and Forensic Management Services Company headquartered in Collinsville, Mississippi, staffed by over fifty professional career forensic specialists and support staff.  He is the author of two forensic technical training manuals and provides a full range of latent print services to law enforcement and the private sector.  Mr. Smith holds a Bachelor of Science Degree in Interdisciplinary Studies from Mississippi State University.

**Summary of Proposed Testimony[6]:**

Mr. Smith will testify about his knowledge of fingerprint analysis in relation to the Internal Affairs investigation of Mr. Eppolito, based upon his review of documents pertaining to the case and his expertise in fingerprint evidence.  In substance, Mr. Smith will testify that it is not possible to photocopy a fingerprint because latent prints are composed of perspiration, and are therefore not visible. Mr. Smith will also testify that this basic principle of fingerprinting was generally understood by the forensic science community well before the NYPD internal affairs investigation in 1985.

---

[5]     Nothing in this summary should be construed as a limitation on the testimony Plaintiff may elicit from Dr. Schottenfeld at trial within the limitations set by the Federal Rules of Evidence.

[6]     Nothing in this summary should be construed as a limitation on the testimony Plaintiff may elicit from Mr. Smith at trial within the limitations set by the Federal Rules of Evidence.

**4.  Frank D. Tinari**
    **President, Tinari Economics Group**
    **220 South Orange Avenue, Suite 203**
    **Livingston, NJ 07039**

**Qualifications:**

See Attached CV.  Dr. Tinari has been the principal economist of Tinari Economics Group since 1979.  He is also a Professor Emeritus in Economics at Seton Hall University.  From 1971 to 2002 Dr. Tinari was an Assistant Professor, Associate Professor and Professor of Economics at Seton Hall.  Dr. Tinari is a long-standing member of both the American Academy of Economic and Financial Experts (AAEFE) and the National Association of Forensic Economics (NAFE).  Dr. Tinari also served as the 2005-2007 President of the National Association of Forensic Economics (NAFE), the country's leading association of forensic economists.  He has co-authored over 18 publications on forensic economics.  Dr. Tinari holds a B.S. in Economics from Fordham College, an M.S. in Economics from Fordham University, and a Ph.D. in Economics from Fordham University.

**Summary of Proposed Testimony[7]:**

See Attached Reports: An Appraisal of Economic Loss to Barry Arnold Gibbs, and An Updated Appraisal of Economic Loss to Barry Arnold Gibbs.  Dr. Tinari will testify about pecuniary losses to Barry Gibbs resulting from his wrongful conviction, including lost wages and benefits.[8]  Dr. Tinari will value Plaintiff's adjusted gross earnings, retirement income, health insurance, and compensation due for excess taxes.  Based on those categories, Dr. Tinari will testify that the present value of Plaintiff's total pecuniary loss stemming from his wrongful conviction is either $1,160,979 or $2,006,150 depending on the tax treatment of the award.  Among other testimony, Dr. Tinari will value the loss resulting from Plaintiff's loss of his United States Postal Service benefits due to his incarceration should Mr. Gibbs choose to purchase private medical insurance.

**5.  Kristin Kucsma[9]**
    **Tinari Economics Group**
    **220 South Orange Avenue, Suite 203**
    **Livingston, NJ 07039**

**Qualifications:**

See Attached CV.  Professor Kucsma has been an economist with the Tinari Economics Group since January 2008.  Prior to joining Tinari Economics, Professor Kucsma spent over 13 years teaching economics at Saint Peter's College, Rutgers, Seton Hall and Drew Universities.  Teaching at both the undergraduate and graduate levels, Professor Kucsma was an award

---

[7]      Nothing in this summary should be construed as a limitation on the testimony Plaintiff may elicit from Dr. Tinari at trial within the limitations set by the Federal Rules of Evidence.

[8]      Plaintiff and Defendants have agreed to stipulate to the value of Mr. Gibbs lost wages if the jury determines that he is entitled to them.

[9]      If necessary, Plaintiff will call either Dr. Tinari or Professor Kucsma to testify but has listed both economists out of an abundance of caution.

winning educator, receiving Professor of the Year Award two years in a row. Her areas of expertise include money, banking and financial markets, corporate finance, and government and business. Kucsma has lectured on consumer safety, measuring the impact of positive and negative externalities, and evaluating market and government responses to these externalities.

Professor Kucsma has worked extensively on cases involving lost profits, personal injury, wrongful death, stock valuation, and employment law. She has played and will continue to play a critical role in expanding the group's commercial damages business by integrating her considerable knowledge of securities valuation and political economy into the existing portfolio of comprehensive services offered by TEG.

Kucsma is a member of the Eastern Economic Association and the American Monetary Institute. She holds an A.B.D. in Economics from Rutgers University, an M.A. in Economics from Rutgers University, and a B.A. in Economics from Seton Hall University.

**Summary of Proposed Testimony[10]:**
See Attached Reports: An Appraisal of Economic Loss to Barry Arnold Gibbs, and An Updated Appraisal of Economic Loss to Barry Arnold Gibbs.  Professor Kucsma will testify about pecuniary losses to Barry Gibbs resulting from his wrongful conviction, including lost wages and benefits.  Professor Kucsma will value Plaintiff's adjusted gross earnings, retirement income, health insurance, and compensation due for excess taxes.  Based on those categories, Professor Kucsma will testify that the present value of Plaintiff's total pecuniary loss stemming from his wrongful conviction is either $1,160,979 or $2,006,150 depending on the tax treatment of the award.  Among other testimony, Professor Kucsma will value the loss resulting from Plaintiff's loss of his United States Postal Service benefits due to his incarceration should Mr. Gibbs choose to purchase private medical insurance.

### *DEFENDANTS' WILL OR MAY CALL THE FOLLOWING FACT WITNESSES:[11]*

1) Peter Mitchell:  Peter Mitchell will testify about his involvement with the Robertson criminal investigation, interactions with Detective Eppolito, the prosecutors, and others, the circumstances of his recantation, and his interaction with federal authorities concerning this case.

2) Barry Gibbs:  Barry Gibbs will testify about his knowledge and familiarity with Virginia Robertson, Rhonda Webber, his involvement with the Robertson criminal investigation, interactions with Detective Eppolito and others, the circumstances of his arrest, prosecution, incarceration, release, involvement with the Innocence Project, and his interaction with federal authorities concerning this case.

---

[10]      Nothing in this summary should be construed as a limitation on the testimony Plaintiff may elicit from Professor Kucsma at trial within the limitations set by the Federal Rules of Evidence.

[11] Addresses listed in Plaintiff's Witness Section.  Defendants reserve the right to call any witnesses listed by Plaintiff.

3) Louis Eppolito, Sr.: Louis Eppolito will testify concerning his involvement in the Robertson criminal investigation, the prosecution, his understanding of accepted policies and procedures at the New York City Police Department (NYPD) at the time of the Robertson homicide investigation in 1986, his supervision, and his involvement with the disciplinary mechanisms of the NYPD, and subject to motions *in limine*, his prior history with the NYPD and his criminal history.

4) Henry Fogelman:  Mr. Fogelman will testify about Barry Gibbs's admission regarding the Robertson homicide, his involvement with the criminal investigation and criminal prosecution of Mr. Gibbs, his interaction with federal prosecutors during the reinvestigation of the Robertson homicide, his interaction with the prosecutors during Gibbs's criminal trial and cooperation with state authorizes.

5) Richard Canderozzi:  Mr. Canderozzi will testify concerning his involvement in the Robertson criminal investigation and his interaction with federal authorities concerning this case.

6) Felix Sciannamea: Mr. Scinnamea will testify concerning his involvement in the Robertson criminal investigation and, subject to the Court's ruling on the parties' Motions In Limine, his testimony in USA v. Eppolito.

7) James Ruggiero: Mr. Ruggerio will testify concerning his involvement in the Robertson criminal investigation.

8) James Fairchild: Mr. Fairchild will testify concerning his involvement in the Robertson criminal investigation and his knowledge and experience working with Eppolito.

9) John Muldoon:  Mr. Scinnamea will testify concerning his involvement in the Robertson criminal investigation, his supervision of Eppolito, and, subject to the Court's ruling on the parties' Motions In Limine, his knowledge of the NYPD policies and practices from the time period at issue: 1986.

10) Louis Rango: Mr. Scinnamea will testify concerning his involvement in the Robertson criminal investigation and his interactions with federal agents.

11) Anthony Marra: Mr. Scinnamea will testify concerning his involvement in the Robertson criminal investigation and, subject to the Court's ruling on the parties' Motions In Limine, his knowledge of the NYPD policies and practices from the time period at issue: 1986.

12) Rhonda Edreich (Webber): Miss Ederich will testify about her knowledge of Barry Gibbs, her involvement in the Robertson investigation, her interactions with Eppolito and others and her interactions with federal agents in 2005.

13) Tim Bakken: Mr. Bakken will testify about his involvement in the Robertson criminal investigation, his interactions with Peter Mitchell throughout the investigation, his

experience as a prosecutor and his interactions with Eppolito, Rango and others in this case.

14) Andrew Dember: Mr. Dember will testify about his involvement in the Robertson criminal investigation, his interactions with Peter Mitchell throughout the criminal prosecution and grand jury indictment proceedings, his experience as a prosecutor and his interactions with Eppolito, Rango and others in this case.

15) Martha Robertson: Will testify about her interactions with Eppolito and Rango during the Robertson investigation.

16) Mark Feldman: Mr. Feldman will testify about his involvement in the Robertson criminal investigation, his experience as a state and federal prosecutor, his interactions with Eppolito, Rango and others in this case, and subject to the Court's ruling on the parties Motions In Limine, limited testimony regarding his knowledge of the underlying facts and prosecution in USA v. Eppolito.

17) John Besunder: Mr. Besunder will testify about his involvement in the Robertson criminal investigation, his experience as a state and federal prosecutor, his interactions with Eppolito, Rango and others in this case

18) Ira London: Will testify about his involvement in the defense of Barry Gibbs at the criminal trial, his subsequent involvement and/or knowledge of Gibbs' appeals and the involvement of the Innocence Project, and Barry Gibbs' admissions.

19) DEA Agent John Perfetti (through designations):  Will testify to admissions by Barry Gibbs and information learned from interviews of witnesses (including Curtis Phillips) during the re-investigation of the Robertson murder in 2005.

20) DEA Agent John Francolla:  Will testify about information learned from interviews of witnesses during the re-investigation of the Robertson murder in 2005.

21) NYPD Det. Egger (CSU):  Will testify to the work of the CSU including retrieval and testing for latent prints done on beer cans at the crime scene.

22) Dr. Andrew Wolodzko:  Will testify about the autopsy and evidence vouchered and turned over to the OCME in or about 1986.

23) Former PO Pryor (signed complaint report):  Will testify about his involvement in the Robertson murder investigation.

24) Peter Gentile (Parks police officer):  Will testify about his involvement in the Robertson murder investigation.

25) PO Valenti (vouchered rope):  Will testify about his involvement in the Robertson murder investigation.

23

26) Kenneth Taub:  Will testify about the reasons why the Kings County DA's Office agreed to vacate the conviction of Barry Gibbs in or about 2005.

27) Former Parks Police Officer Lynch:  Will testify about his involvement in the Robertson murder investigation.

28) Former Parks Police Officer Dorogoff:   Will testify about his involvement in the Robertson murder investigation.

29) Witnesses as needed to authenticate/explain documents

30) Rebuttal witnesses, as needed, to testify about Leak Investigation

31) All persons whose names appear in Leak Investigation file/documents:  Will testify about personal knowledge concerning the Leak Investigation, steps to investigate the charges against Eppolito and the decision to dismiss those charges.

32) Rebuttal witnesses, as needed, to testify about NYPD training, supervision and discipline

### *DEFENDANTS' WILL CALL THE FOLLOWING EXPERT WITNESSES*

33) John Monaghan (expert)
    PO Box 39
    Blauvelt, NY 10913

Mr. Monaghan will testify in substance that proper police practices were followed in the Robertson investigation.  He will testify only as a rebuttal witness, i.e., only if defendants' police practices expert Russell Fisher testifies.

34) Paul Nassar, M.D. (expert)
    500 Fifth Avenue, Suite 923
    New York, NY 10110

Dr. Nassar will testify about the causes of Mr. Gibbs' claimed psychiatric, psychological and/or mental distress, that he claims to experience at this time.

35) Jonathan D. Fisher, Ph.D. (expert)
36) John E. Scarbrough, Ph.D. (expert)
    127 Main Street, Building II
    Ridgefield, CN 06877

Drs. Fisher and/or Scarbrough will testify to Mr. Gibbs' economic losses.

7.    DESIGNATIONS OF DEPOSITION TESTIMONY

**Plaintiff**:

Deposition of Martha Robertson

04:02-05:06
05:22-06:14
07:13-08:22
15:13-16:07
17:19-30:03
32:17-33:25
32:12-35:04

Trial Deposition of Special Agent John Perfetti (by video)

05:02-14:05
15:19-47:23
47:25-55:15 (subject to redactions pursuant to Court's rulings on Motions *in Limine*)
55:16-62:23
63:24-64:17 (subject to redactions pursuant to Court's rulings on Motions *in Limine*)
64:18-65:21
65:22-66:22 (subject to redactions pursuant to Court's rulings on Motions *in Limine*)
66:23-68:17
107:12-111:16
120:20-123:02 (subject to redactions pursuant to Court's rulings on Motions *in Limine*)
129:04-137:14
129:16-129:22 (subject to redactions pursuant to Court's rulings on Motions *in Limine*)
137:09-137:14 (subject to redactions pursuant to Court's rulings on Motions *in Limine*)
143:05-143:23
145:19-148:21
149:23-151:09

Deposition of Special Agent John Perfetti (by video)[12]

28:05-32:25
42:16-44:14
46:21-47:09
138:23-141:08
144:22-145:25

---

[12]    Plaintiff objects to using any testimony from the deposition of Special Agent John Perfetti at trial. The parties took a trial deposition of Special Agent Perfetti at which he was questioned thoroughly by both Plaintiff and Defendants. Thus, Special Agent Perfetti is not unavailable, and admitting his deposition testimony would be repetitive and unnecessary. Out of an abundance of caution, however, Plaintiff has designated deposition testimony in the event that Defendants are permitted to introduce testimony from Special Agent Perfetti's deposition at trial.

303:23-305:17
319:05-320:02

**Defendants**:[13]

Deposition of Martha Robertson

6:18-22
8:23-9:11
9:12-9:22
13:5-11
14:5-8
14:15-15:12
17:4-17:18
31:23-32:7
38:20-39:4
39:21-40:15
45:14-17; and 46:8-11, 47:8-48:17
53:25-54:9
554:21-55:21

Trial Testimony of DEA Agent John Perfetti (1/28/10)

6:25-11:21
51:21-52:24
69:13-71:18
76:5-77:22
78:2-6
79:24-81:8
81:19-100:7
100:16-101:20
104:16-108:4
108:20-110:12
112:7-115:2
116:25-129:4
129:23-130:12
138:12-139:18
148:25-149:20

---

[13] Defendants object to Plaintiff's Designation of Martha Robertson's testimony pp. *23:17-22 and 24:2-5* pursuant to FRE 602. Defendants further reserve their right to object to plaintiff's designations pursuant to Rules 403 and 801(c).

<u>Deposition Testimony of DEA Agent John Perfetti (1/29/09)</u>[14]

202:13-208:16
209:8-216:11
221:15-222:23
234:16-24
235:24-243:13
248:19-251:5
255:7-11
256:7-258:10
261:15-262:8
263:21-265:12
268:6-11
269:6-270:10
274:20-275:4
289:5-24
294:8-295:22

---

[14]   Because the videotaped trial testimony of DEA Agent Perfetti was strictly limited to three hours at the insistence of the U.S. Attorney's Office, we submit that use of the deposition of Agent Perfetti is appropriate in this case. We will submit copies of the Touhy letters setting forth the government's position on this issue if necessary.

8.    EXHIBITS:

### PLAINTIFF'S EXHIBIT LIST

\* = no objections to authenticity

\*\* = no objections on any grounds

† = subject to omission or redaction pursuant to Court's rulings on Motions *in Limine*

| Ex No. | Exhibit description |
|---|---|
| 1† | Various Investigative Documents and Notes related to the Robertson murder investigation[15] |
| 2† | Excerpts of Mafia Cop, by Louis Eppolito and Bob Drury, Pocket Star Books © 1992 |
| 2A | Hard copy of Mafia Cop to be shown to jury |
| 3† | DEA investigative report of interview with Richard Canderozzi and handwritten notes |
| 4 | Photos of Crime Scene (2007) |
| 5† | Portions of People v. Barry Gibbs Pre-Trial and Trial Transcripts, 8173/1986 |
| 6† | Portions of USA v. Eppolito, 05-cr-00192-JBW, Ineffective Assistance Hearing Transcript |
| 7 | ---[16] |
| 8† | DEA investigative report of interview with Rhonda Edreich and handwritten notes |
| 9 | --- |
| 10 | --- |
| 11 | --- |
| 12 | Map of Brooklyn |
| 13 | Detective Guide  - "Investigation - Homicide or Suspicious Death" |
| 14 | NYPD memo: The Availability and Use of the Catch System |
| 15 | Anthony Marra's performance evaluation of Eppolito |
| 16† | 1984 Leak Investigation File and related documents |
| 17 | --- |
| 18 | --- |
| 19 | --- |
| 20† | DEA investigative report of interview with Louis Rango and handwritten notes |
| 21 | Transcript of Audiotape from Lineup |
| 22 | -- |
| 23 | Copy of Plaintiff's Filed Complaint |

---

[15] Plaintiff intends to include portions of Exhibit 1, which is a compilation exhibit, pursuant to Court's rulings on motions *in limine*.

[16] We have attempted as much as possible to use the numbering from depositions for exhibits in order to facilitate the use of documents with witnesses. These skips in numbers represent exhibits that won't be used at trial.

| Ex No. | Exhibit description |
|---|---|
| 24 | Affidavit of Service on Louis Eppolito |
| 25 | --- |
| 26 | --- |
| 27 | --- |
| 28† | Eppolito's Civilian Complaint Review Board (CCRB) file |
| 29 | USA v. Eppolito, 06-CR-11-1-RLH-GWF - Plea Agreement |
| 30 | Various samples of Defendant Eppolito's signature |
| 31 | -- |
| 32 | James Smith Murder Investigative Documents |
| 33† | Transcript of ADA Bakken's November 14, 1986 interview of Barry Gibbs |
| 34 | -- |
| 35 | Various samples of Sergeant Muldoon's signature |
| 36 | Performance Evaluation of Eppolito by Muldoon |
| 37 | Performance Evaluation of Eppolito by Muldoon |
| 38 | Performance Evaluation of Eppolito by Muldoon |
| 39† | USA v. Eppolito, Second Circuit Decision, 543 F.3d 25 (2008) |
| 40† | Kings County District Attorney's Office File, People v. Barry Gibbs, 8173/1986 |
| 41 | Audio CD of lineup |
| 42 | Line-up Script |
| 43 | Miranda Warnings |
| 44 | United States Parks Police Criminal Incident Reports |
| 45 | --- |
| 46 | --- |
| 47 | --- |
| 48 | --- |
| 49 | Stipulation Pursuant to Fed. R. Civ. P. 29: DEA Agent Depositions |
| 50† | Stipulation and Order for the Protection of Confidential Documents and Testimony |
| 51† | DEA investigative report of interview with Barry Gibbs and handwritten notes |
| 52† | Original Homicide File recovered from Eppolito's home with cover letter from Assistant United States Attorney Henoch |
| 53 | --- |
| 54† | DEA investigative report of interview with Peter Mitchell and handwritten notes |
| 55† | DEA investigative report of interview with Curtis Philip and handwritten notes |
| 56† | DEA investigative report of interview with Henry Fogelman and handwritten notes |
| 57 | --- |
| 58 | --- |
| 59 | --- |
| 60† | Arrest worksheet concerning Gibbs/Weber Assault charge |

| Ex No. | Exhibit description |
|---|---|
| 61† | Arrest Report concerning Gibbs/Weber Assault charge |
| 62† | Criminal Court Sheet concerning Gibbs/Weber Assault charge |
| 63† | People v. Fogelman Sentence and Commitment Order; Judge David P. Sullivan, NYS Supreme |
| 64† | DOC Protective Custody Housing Disposition Form |
| 65† | DOC Voluntary Protective Custody Status Consideration Form |
| 66† | Nassau County Sheriff's Dept. - Administrative Segregation Interview and Review |
| 67† | Cayuga Correctional Facility Section/ Classification Sheet - Legal Date Computation |
| 68† | DOC Memo: Certificate of Presumptive Release EEP Determination |
| 69† | DOC Memo: Certificate of Earned Eligibility Determination Notice |
| 70 | --- |
| 71 | --- |
| 72 | --- |
| 73 | --- |
| 74 | --- |
| 75 | --- |
| 76 | --- |
| 77 | Patrol Guide - Follow-up Investigations of Complaints Already Recorded |
| 78 | --- |
| 79 | --- |
| 80 | John Monaghan Resume |
| 81 | --- |
| 82† | John Monaghan LinkedIn webpage |
| 83 | --- |
| 84 | People v. Gibbs Indictment |
| 85 | People v. Gibbs Sentence and Commitment Order |
| 86 | Decision and Order to Vacate and Dismiss Indictment (09/29/2005) |
| 87 | Joint Motion to Vacate Conviction (09/28/2005) |
| 88 | Alexis Brosen CV |
| 89 | Russell Fischer CV |
| 90 | Richard Schottenfeld CV |
| 91 | Frank D. Tinari CV |
| 92 | Kristin Kucsma CV |
| 93 | USA v. Eppolito, 06-CR-11-1-RLH-GWF - Tax Fraud sentencing transcript (07/01/2008) |
| 94 | USA v. Eppolito, 06-CR-11-1-RLH-GWF – Tax Fraud Judgment |
| 95 | USA v. Eppolito, 05-cr-00192-JBW - Verdict form |
| 96† | USA v. Eppolito, 05-cr-00192-JBW – District Court Decision, 436 F Supp 2d |

| Ex No. | Exhibit description |
|---|---|
| | 535 (2006) |
| 97 | USA v. Eppolito, 05-cr-00192-JBW – Third Superseding Indictment |
| 98† | USA v. Eppolito, 05-cr-00192-JBW – Excerpts from Burton Kaplan's testimony |
| 99 | USA v. Eppolito, 05-cr-00192-JBW - Judgment |
| 100 | Defendants Fairchild, Rango, Muldoon, Marra, and City of New York's Responses and Objections to Plaintiff's First Requests for Admission |
| 101 | Defendants Fairchild, Rango, Muldoon, Marra, and City of New York's Supplemental Responses and Objections to Plaintiff's First Request for Admission (11/07/07) |
| 102 | Defendants Fairchild, Rango, Muldoon, Marra, and City of New York's Supplemental Responses and Objections to Plaintiff's First Request for Admission (07/31/08) |
| 103 | Defendants Fairchild, Rango, Muldoon, Marra, and City of New York's Supplemental Responses and Objections to Plaintiff's First Request for Admission (08/19/08) |
| 104 | Defendants Fairchild, Rango, Muldoon, Marra, and City of New York's Responses and Objections to Plaintiff's First Interrogatories and Requests for Production of Documents |
| 105 | Selected photos of Louis Eppolito |
| 107 | Selected photos of Barry Gibbs |
| 108† | Crime Scene Photos (color and black/white) |
| 109† | Audio Tape of Phone Conversation between Barry Gibbs and Rhonda Weber |
| 110† | Audio Tape of Interview with Mitchell |
| 111† | Audio Tape of Bakken Interview with Barry Gibbs at precinct |
| 112 | Barry Gibbs Statement at People v. Barry Gibbs Sentencing Hearing |
| 113 | Photographs of Barry Gibbs taken at precinct |
| 114 | Department of Corrections: Certificate of Incarceration |
| 115† | Post Office record - restored to full duty on 11-06-86 |
| 116† | Mollen, Milton, Chair (1994, July 7). *The City of New York, Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department Commission Report.* |
| 117† | All DEA-6 Reports (Chronological Order) |
| 118† | Felix Sciannamea Testimony from U.S.A. v. Eppolito, 05-cr-00192-JBW |
| 119† | Michael Thompson Murder Investigative Documents |
| 120† | Selected prison records of Barry Gibbs |
| 121† | Selected United States Postal Service records of Barry Gibbs |
| 122 | Selected correspondence from or to Barry Gibbs concerning efforts to obtain criminal representation and or otherwise prove his innocence |
| 123† | Selected documents from Henry Fogelman's parole file |
| 124 | Virginia Robertson Autopsy Report |
| 125 | Online Booking System Arrest Worksheet |

| Ex No. | Exhibit description |
|---|---|
| 126† | Transcript of taped phone conversations between Rhonda Weber and Barry Gibbs in 1986 |
| 127† | Portions of USA v. Eppolito, 05-cr-00192-JBW, Trial Transcript |
| 128 | Other NYPD Policies concerning supervision and investigations |

Plaintiff: Hearsay Evidence Pursuant to Fed. R. Evid. 803(18)

a.  Geberth, Vernon J.  (2001).  Practical Homicide Investigation.  New York: CRC Press.

b.  International Association of Chiefs of Police.  (1989).  Criminal Investigation. Arlington, Virginia.

c.  International Association of Chiefs of Police.  (1971).  Criminal Investigation. Gaithersburg, Maryland.

d.  International Association of Chiefs of Police. (1983).   Training Key, Volume 14, #332.  The Follow-up Investigation.  Gaithersburg, Maryland.

e.  National Institute of Justice.  (2001, July).   Early Warning Systems: Responding to the Problem Officer.

f.  New York City Police Department Detective Guide Investigation Homicide or Suspicious Death.   (1981, September 18).

g.  O'Hara, Charles. (1971).   Fundamentals of Criminal Investigation.  Springfield: Charles Thomas Publisher.

h.  Soderman, Harry,  O'Connell, John & O'Hara, Charles. (1962).  Modern Criminal Investigation. New York:  Funk and Wagnall's.

i.  Weston, Paul & Wells, Kenneth. (1974). Criminal Investigation:  Basic Perspectives.  New Jersey:  Prentice-Hall.

DEFENDANTS' EXHIBIT LIST

| |
|---|
| A.  Audio recording of Mitchell interview – 11/4/86 (Bates 1920, KCDA # A86-2135) |
| B.  DA's office "scratch" re Mitchell interview (KCDA 000047-48) |
| C.  Audio recording of lineup – 11/14/86 (PX-41, marked at Bakken Deposition (82:18-25) |
| D.  DA's office "scratch" re lineup (KCDA 000051-52) |
| E.  Barry Gibbs' videotaped statement (11/14/86) |
| F.  Trial Transcript, 642-47 |
| G.  Hearing Transcript, 36-37 |
| H.  Detective's case folder (DOJ 000001-99) |
| I.  Crime Scene Unit runs, reports, photos (produced 4/3/09) |
| J.  Kings County DA documents, Bates KCDA 00001-475 (produced 5/7/08) |
| K.  Kings County DA documents, Bates 882-1027 (produced 10/5/07) |
| L.  Anthony Smith arrest report (6/19/86) |
| M.  70th Precinct Command Log (6/19/86) |
| N.  Documents produced by Kings County Family Court in response to subpoena |
| O.  Barry Gibbs' U.S. Navy records (Bates 00001-57) |
| P.  Barry Gibbs' U.S. Postal Service records (Bates 00175-224, with certification cover letter) |
| Q.  DEA agents reports/notes re interviews of Barry Gibbs |
| R.  DEA agents reports/notes re interview of Curtis Phillips |
| S.  DEA agents reports/notes re interviews of Peter Mitchell |
| T.  DEA agents reports/notes re interviews of any other witness produced in discovery |
| U.  Documents re Barry Gibbs' prior arrests (KCDA 446-75, Bates ## 1028-29, 1898-1916) |
| V.  Documents concerning Peter Mitchell criminal history (pre- and post-trial) |
| W.  Audio recording and/or transcript of Barry Gibbs' appearance on Leonard Lopate show |

| | |
|---|---|
| X. | Audio/video recording, or transcript, of Barry Gibbs' appearance on "The Moth Presents Stories About The Moth" |
| Y. | All documents marked as exhibits in discovery |
| Z. | Criminal court files concerning arrests of Virginia Robertson (requisitioned from archives) |